UNITED STATES DISTRICT COURT                    O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ELIZABETH MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-07-110 |
| | § | |
| WEBB COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment.  [Dkt. No. 17].[1] After duly considering the summary judgment motion, response, reply, and applicable law, Defendant's motion for summary judgment is GRANTED.

## I.      BACKGROUND

This is a gender discrimination case.  Plaintiff Elizabeth Martinez alleges that Defendant Webb County, Texas did not select her for the position of Webb County Public Defender because she is a woman.  Plaintiff contends that Defendant Webb County therefore violated Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, as well as the Texas Commission on Human Rights Act.

### A.      Factual Background

On January 1, 2007, Leroy Medford vacated his position as Public Defender of Webb County, Texas.  [Dkt. No. 17, Ex. C at 8-10].  Thereafter, through a series of regular meetings, the Webb County Commissioners Court began the process of appointing another individual to the position.  After Medford vacated the position, the Commissioners Court appointed Virginia

---

[1] "Dkt. No." refers to the docket number entry in the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.

Aranda as interim director of the Public Defender's Office.  The Commissioners Court also instructed the Webb County Administrative Services Department to draft a Request for Qualifications that would notify prospective applicants of the minimum requirements necessary for the position of Public Defender.  [Dkt. No. 17, Ex. E at 4].

On January 22, 2007, the Commissioners Court discussed the Request for Qualifications and the procedure to be used once all applications for the position were received.  [Dkt. No. 17, Ex. F at 10-11].  During the meeting, Cynthia Mares, the Webb County Administrative Services Director, presented a draft of the Request for Qualifications and asked for further direction from the Commissioners Court.  [*Id*.].  Commissioner Garza recommended that the Request for Qualifications include trial experience as a qualification for the position.  [*Id*.].  The Commissioners Court voted unanimously to approve the Request for Qualifications presented by Mares, to include the recommendations by the court (trial experience).  [*Id*.]. In response to Mares' inquiry whether the Commissioners Court wanted to view all application materials, Commissioner Garza suggested that the Commissioners Court form a committee to view the applications and make recommendations.  [*Id*.].  The Commissioners Court voted unanimously for Mares to return with recommendations for a committee on the next meeting.  [*Id*.].

In conjunction with the Webb County Attorney's Office, Mares and the Administrative Services Department incorporated the recommendations of the Commissioners Court into the Request for Qualifications.  [Dkt. No. 17, Ex. H].  The final version of the Request for Qualifications listed several qualification requirements, including "five years experience in the practice of criminal law and felony trial experience, including three years of supervisory experience." [2]  [Dkt. No. 17, Ex. H, Ex. 2].  The final version of the Request for Qualifications

---

[2] In pertinent part, the Request for Qualifications listed the following qualification requirements:

also described "essential duties and responsibilities" of the position and noted "other skills and abilities" required for the position.  [Dkt. No. 17, Ex. H, Ex. 2].  The final version of the Request for Qualifications was included in an application and material packet for the Public Defender position, all of which were made available for the public on January 31, 2007.  [Dkt. No. 17, Ex. H].

On February 12, 2007, the Commissioners Court discussed additional procedural steps to be taken in selecting the Public Defender.  Commissioner Garza suggested that a screening committee review the applications and bring back recommendations to the Court, and Commissioner Tijerina motioned for the same.  [Dkt. No. 17, Ex. I at 18].  Next, attorney Homero Ramirez recommended that the initial screening be an administrative matter and that whoever met the minimum requirements be brought to the Commissioners Court to decide who would be interviewed.  [*Id.* at 18-19].  Thereafter, the Commissioners Court voted; first, that the Administrative Services Department screen the candidates to ensure they met the minimum qualifications and; second, that all applicants who met the minimum qualifications should be brought back to the Commissioners Court for an interview.  [*Id.* at 19].

On February 26, 2007, the Commissioners Court discussed the finalization of the procedure for selecting the Public Defender.  [Dkt. No. 17, Ex. J at 8].  The Commissioners

---

1. Graduation from an accredited college or university with a Doctorate of Jurisprudence, and five years experience in the practice of criminal law and felony trial experience, including three years of supervisory experience.
2. Must be licensed to practice law in the State of Texas.
3. Comprehensive knowledge of criminal defense law and appeals, good knowledge of legal research and writing skills including familiarity with computer-based legal research, good knowledge of investigatory methods.  Skills in supervising professional employees; skill in organization and presentation of facts and supporting logic; skill in communicating effectively in English and Spanish with hostile, abusive or irrational individuals; skill in community (sic) effectively both verbally and in writing.
4. Ability to establish and maintain effective working relationships with co-workers, County employees, outside organizations, service providers and the general public.
5. Ability to prioritize, plan and organize work to meet numerous and amended deadlines for motions, extensions, show cause and evidentiary hearing and other court requirements.
6. Ability to operate personal computer and basic office equipment.
[Dkt. No. 17, Ex. H, Ex. 2].

Court voted unanimously for each Commissioner to appoint a member, not from the judiciary, for the selection committee.  [*Id*. at 8-9].  Also during this meeting, Judge Valdez requested that the selection committee recommend the top two candidates to the Commissioners Court.  [*Id*. at 8].  Subsequent to this meeting, the Commissioners appointed five selection committee members, namely Arturo Nava, Blas Castaneda, Jose Guevara, Tranquilino Alvarez, and Vicki Cantu.  [Dkt. No. 17, Ex. D at 17-19].

Ultimately, six individuals applied for the position of Public Defender, specifically—Plaintiff, Hugo Martinez, Virginia Aranda, Melinda Vidaurri, Ernesto Garcia, and Anthony De La Vina.  [*Id*. at 11-12].  Mares thereafter reviewed the six candidates to determine whether they met the minimum qualifications.  [*Id*. at 12].  She determined that Vidaurri did not meet one of the minimum qualifications.  [*Id*.].  However, Mares determined that the five remaining candidates possessed the minimum qualifications.  [Dkt. No. 18, Ex. 9 at 33].  On February 20, 2007, Mares sent copies of the application packet for each of the six candidates to the Commissioners.  [*Id*. at 31].  On February 27, 2007, Mares also sent a memorandum to each of the Commissioners stating that only five of the candidates met the minimum qualifications, and that the selection committee would interview the five candidates unless Mares heard otherwise.  [*Id*. at 33].

On March 6, 2007, Mares met with the five selection committee members and provided them with instructions related to the selection of the candidates.  [Dkt. No. 18, Ex. 9 at 16].  Mares gave the selection committee an orientation session and provided options for methods of choosing the candidates.  [*Id*. at 16].  Thereafter, the selection committee agreed to use a scoring system and also determined the criteria they would use to score the candidates.  [*Id*. at 15, 17].  The criteria included experience, initiative, personality, professionalism, management skills,

attitude, training for the Public Defender position, and experience for the Public Defender position.  [Dkt. No. 17, Ex. L at 30-32].

On March 7, 2007, the selection committee interviewed Plaintiff, Hugo Martinez, and the other three candidates.  [Dkt. No. 17, Ex. B at 10 & Ex. D at 14-15].  During the interviews, the selection committee members rated the candidates and gave them scores based on the criteria they previously determined.  After the interviews, Mares collected the scoring sheets and tallied the scores of each candidate, then presented the results to the selection committee.  [Dkt. No. 17, Ex. D at 15].  Plaintiff received the highest score, while Virginia Aranda and Hugo Martinez received the second and third highest scores, respectively.  [Dkt. No. 17, Ex. D at 15-16].  The selection committee subsequently decided to recommend Plaintiff and Virginia Aranda as the two top candidates.  [Dkt. No. 17, Ex. D at 20].  The selection committee then sent a memorandum to the Commissioners, which indicated that the selection committee unanimously voted for Plaintiff and Virginia Aranda.  [Dkt. No. 18, Ex. 12].

After the selection committee interviewed the candidates, Mares also sent a memorandum to the Commissioners, noting that the selection committee recommended Plaintiff and Virginia Aranda as the top two candidates.  [Dkt. No. 18, Ex. 13].  Also after the interviews, selection committee member Jose Guevara wrote a letter to Commissioner Tijerina, in which he stated that Plaintiff and Virginia Aranda did not have the felony trial experience required under the Request for Qualifications.  [Dkt. No. 17, Ex. B at 40 & Ex. M at 14-15].  After receiving Guevara's letter, Commissioner Tijerina prepared and sent a memorandum, dated March 8, 2007, to the other Commissioners in which she expressed concern that the two candidates recommended by the selection committee did not have the felony trial experience required under the Request for Qualifications.  [Dkt. No. 17, Ex. G, Ex. 13].  Through her memorandum, Commissioner

Tijerina also requested that the Commissioners Court discuss this matter and the screening procedure during the meeting scheduled for March 12, 2007.  [*Id.*].

On March 12, 2007, the Commissioners Court discussed the selection committee's recommendations and voted to interview all candidates.  [Dkt. No. 17, Ex. N at 13].  Before addressing this issue, the Commissioners heard public comments, including the comments of Guevara who expressed his concern that some of the applicants were lacking qualifications. [*Id.*].  Thereafter, a motion by Commissioner Garza to accept the selection committee's recommendations failed.  [Dkt. No. 17, Ex. N at 13].  Next, upon the motion of Commissioner Martinez, the Commissioners Court voted to interview the five candidates again themselves during an executive session.  [*Id.*].  On March 23, 2007, the Commissioners interviewed all candidates.  [Dkt. No. 17, Ex. O at 1].  Following these interviews, during an open session, the Commissioners Court voted unanimously to appoint Hugo Martinez as Public Defender.  [*Id.*].

### B.     Procedural History

On September 13, 2007, Plaintiff filed her original complaint with the Court.[3]  [Dkt. No. 1].  Plaintiff alleges causes of action under Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and the Texas Commission on Human Rights Act.  [Dkt. No. 1].  Thereafter, Defendant filed the pending Motion for Summary Judgment.  [Dkt. No. 17].  Plaintiff next filed a Response in Opposition to Defendant's Motion for Summary Judgment.  [Dkt. No. 18].  Defendant subsequently filed a Reply to Plaintiff's Response.  [Dkt. No. 22].

---

[3] Prior to filing her original complaint with the Court, Plaintiff asserts that she filed a charge of gender discrimination with both the Equal Employment Commission Opportunity and the Texas Workforce Commission-Civil Rights Division.  [Dkt. No. 1 ¶ 14].  After filing these charges, Plaintiff asserts that she received Notice of Right to File a Civil Action from the Texas Workforce Commission-Civil Rights Division, as well as a Notice of Rights from the Equal Employment Opportunity Commission.  [*Id.*].  Defendant does not challenge these assertions.

## II.    DISCUSSION

Defendant raises several summary judgment arguments.  First, Defendant contends that the evidence negates Plaintiff's assertion that the felony trial experience requirement was a pretext for gender discrimination.   Second, Defendant contends that the evidence negates Plaintiff's assertion that she was "clearly better qualified" for the Public Defender position. Third, Defendant contends that the evidence negates Plaintiff's assertion that Defendant disregarded its procedure for hiring the Public Defender.

### A.    Jurisdiction

Plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.  The Court has original subject matter jurisdiction over these claims under 28 U.S.C. § 1331.  Additionally, Plaintiff asserts a claim under the Texas Commission on Human Rights Act. The Court has supplemental jurisdiction over this claim under 28 U.S.C. §1367.

### B.    Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   All facts and evidence must be taken in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The evidentiary standard for summary judgment motions is provided by Federal Rule of Civil Procedure 56(e).  The rule states in part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

FED. R. CIV. P. 56(e)(1).  Moreover, in responding to a properly supported motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e)(2).  If a party does not so respond, summary judgment should be entered.  *See id.*

### C.   Title VII Standard

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  41 U.S.C. § 2000e.  Similarly, the Texas Commission on Human Rights Acts provides that an employer commits an unlawful employment practice if it fails or refuses to hire an individual "because of race, color, disability, religion, sex, national origin, or age[.]"  TEX. LAB. CODE ANN. § 21.051(1).  It is also well established that gender discrimination in public employment violates the Equal Protection Clause of the Fourteenth Amendment.  *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (citation omitted).  Moreover, in addition to bringing suit under Title VII, a plaintiff alleging gender discrimination may bring suit under 42 U.S.C. section 1983.  *Id.*

The summary judgment test for discrimination under section 1983 is the same as the test under Title VII.  *Patel v. Midland Memorial Hosp. and Medical Center*, 298 F.3d 333, 342 (5th Cir.) cert. denied, 537 U.S. 1108 (2003)) (citation omitted).   Claims under the Texas Commission on Human Rights Act are also analyzed under Title VII precedent.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (citing *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)); *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 n.10 (5th Cir. 2001) (citation omitted). To survive summary judgment, a Title VII plaintiff must first show a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Next, if a *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment actions. *McDonnell Douglas*, 411 U.S. at 802-04.  If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the articulated reason was merely a pretext for discrimination. *Id*.

### 1.    Plaintiff's *prima facie* case of discrimination and Defendant's reason for the challenged employment action

As a threshold matter, Plaintiff must establish a *prima facie* case of discrimination to proceed further with the rest of the burden shifting analysis. If a defendant files a motion for summary judgment and the court finds that the plaintiff has not established his *prima facie* case, the court must grant that motion.  *See McDonnell Douglas*, 411 U.S. at 802-04.  To establish a *prima facie* case of discrimination, a plaintiff must prove: first, that she is a member of a protected class; second, that she applied for the position of public defender; third, that she was qualified for the position when she applied; fourth, that she was not selected; and, fifth, that after Webb County declined to hire her, a male was selected.  *Davis v. Chevron U.S.A. Inc.*, 14 F.3d

1082, 1087 (5th Cir. 1994) (citing *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983)).

In this case, for the purposes of Defendant's summary judgment motion, Defendant does not dispute that Plaintiff can establish a *prima facie* case of gender discrimination. Plaintiff is female, a protected class under Title VII and the Texas Commission on Human rights Act. It is undisputed that Defendant selected Hugo Martinez, a male who is not a member of the protected class, for the position of Public Defender. However, it is also undisputed that at least one Commissioner expressed concern that Plaintiff did not have the felony trial experience required for the Public Defender position. [Dkt. No. 17, Ex. R]. Among other requirements, the Request for Qualifications noted that applicants should possess "felony trial experience." [*Id.*]. During her deposition, Plaintiff indicated that she possessed one felony bench trial and one "examining trial." [Dkt. No. 17, Ex. A at 51-52]. Nevertheless, for purposes of the summary judgment motion, Defendant concedes that Plaintiff has satisfied her burden to establish a *prima face* case. The Court therefore turns to address whether Defendant has articulated a legitimate, non-discriminatory reason for not selecting Plaintiff for the position.

Every Commissioner stated that he or she voted to appoint Hugo Martinez because he was the most qualified candidate. [Dkt. No. 17, Ex. P, Q, R, S, T]. The Commissioners Court considered several factors in concluding that Hugo Martinez was better qualified than Plaintiff, including felony trial experience, total years of experience, and total years as a public defender. [*Id.*]. Additionally, every Commissioner stated that Plaintiff's gender did not play a factor in the decision to appoint Hugo Martinez instead of Plaintiff. [*Id.*]. In light of this summary judgment evidence, the Court finds that Defendant has articulated a legitimate, non-discriminatory reason for its decision to hire Hugo Martinez.

### 2.    Pretext

Because Defendant has articulated a legitimate reason for its decision to hire Hugo Martinez, the Court now turns to determine whether Plaintiff has shown that Defendant's articulated reason was a pretext for gender discrimination.   A showing of pretext may be sufficient, when coupled with the *prima facie* case, to deny summary judgment.   *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).   However, the burden of persuasion remains at all times with the plaintiff; that is, the plaintiff must demonstrate that the employer's proffered reason(s) are a pretext for discrimination.   *See Evans v. City of Houston*, 246 F.3d 344, 350-51 (5th Cir. 2001).[4]

### a.    Whether Plaintiff has established a pretext by showing that she was "clearly better qualified" than Hugo Martinez

Evidence of the plaintiff's superior qualification may be probative of a pretext.   *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (citing *Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).   A Title VII plaintiff may thus survive summary judgment where she provides evidence that she was "clearly better qualified" than the individual selected for the position at issue.   *Celestine*, 266 F.3d at 356-7 (5th Cir. 2001) (citing *Scott v. Univ. Of Miss.*, 148 F.3d 493, 508 (5th Cir. 1998), overruled on other grounds by *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000)).   However, in order to create a fact issue as to relative

---

[4] Plaintiff misunderstands her evidentiary burden.   Plaintiff correctly observes that evidence demonstrating that the employer's explanation is false, taken together with the plaintiff's *prima facie* case, may support an inference of discrimination.   However, Plaintiff incorrectly cites *Reeves* for the proposition that "once the employer's justification has been eliminated," "[n]o further evidence of discriminatory animus is required."   [Dkt. No. 18 at 14].

While in some cases the plaintiff's *prima facie* case, coupled with a showing that the defendant's proffered reason(s) are "unworthy of credence" may satisfy plaintiff's burden, such is not always the case.   In *Reeves*, the Supreme Court noted that "the ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reasons is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."   *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524 (1993)).   Indeed, "'[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'"   *Id*. at 147 (quoting *St. Mary's Honor Center*, 509 U.S. at 519).   Contrary to her assertion, therefore, Plaintiff must produce some evidence of discrimination.

qualifications, "a plaintiff must provide sufficiently specific reasons for [her] opinion; mere subjective speculation will not suffice." *Scott*, 148 F.3d at 508.  Moreover, differences in qualifications between the plaintiff and the individual selected are not probative evidence of discrimination unless the differences are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Celestine*, 266 F.3d at 357 (quoting *Deines*, 164 F.3d at 280-1).

Here, Plaintiff argues that she was "clearly better qualified" for the position.  As a threshold matter, the Court refuses to substitute its judgment as to who was more qualified for the position of Public Defender.  *See Scott*, 148 F.3d at 509 (noting that "disagreements over which applicant is more qualified are employment decisions in which we will not engage in the practice of second guessing.") (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).  Accordingly, the scope of the Court's analysis with regard to this issue is limited to whether Plaintiff has pointed to evidence creating a fact issue as to whether she was "clearly more qualified" than Hugo Martinez for the Public Defender position.  In support of her argument that she was clearly better qualified than Hugo Martinez, Plaintiff asserts that she received higher scores from the selection committee.[5]  The Court finds, however, that these scores are not evidence of Plaintiff's relative qualifications.  During the interviews, the selection committee assigned scores to each of the candidates, based upon a set of criteria they discussed and developed themselves, including experience, professionalism, management skills, personality, attitude, training, and initiative.  [Dkt. No. 17, Ex. L at 30-32].  At the conclusion of the interviews, Mares tallied the scores and determined that Plaintiff and Virginia Aranda both

---

[5] The Court notes that the scoring sheets are not competent summary judgment evidence because they are not attached to sworn affidavits or otherwise authenticated.  [Dkt. No. 18 at 11].  Nevertheless, Defendant has provided the Court with deposition testimony sufficient to show that Plaintiff received a higher cumulative score than Hugo Martinez.  [Dkt. No. 17, Ex. 5 at 15].

received greater cumulative scores in comparison to Hugo Martinez.  [Dkt. No. 17, Ex. D at 15].
It is apparent, however, that each score represented merely the subjective opinion of the selection
committee members and are thus irrelevant in determining Plaintiff's relative qualification.  *See*
*Scott*, 148 F.3d at 509, n.17 (noting that the statement of an expert witness that the plaintiff was
"clearly better qualified" was insufficient to create a fact question without specific reasons).  The
Court therefore turns to determine whether Plaintiff has pointed to other evidence creating a fact
issue as to whether she was "clearly better qualified" for the position.

Plaintiff argues that she was "clearly better qualified" than Hugo Martinez because she
possessed more supervisory experience.  In support of this argument, Plaintiff directs the Court
to her affidavit, which shows that she supervised several attorneys and legal secretaries while
practicing at the Webb County Public Defender's Office.  [Dkt. No. 18, Ex. 17].  In comparison,
Plaintiff asserts that Hugo Martinez did not possess the requisite years of supervisory experience
and that the Commissioners thus ignored the fact that he did not meet at least one minimum
qualification.   However, Defendant has provided undisputed evidence showing otherwise.
Indeed, summary judgment evidence before the Court shows that, contrary to Plaintiff's
assertion, Hugo Martinez possessed supervisory experience beyond his term as interim director
of Laredo Legal Aid.  During his deposition, Hugo Martinez stated that he supervised two less-
experienced attorneys during his employment with the Webb County Public Defender's Office
from 1992 through 2001.  [Dkt. No. 22, Ex. A].  Moreover, Hugo Martinez stated that he served
as interim director for Laredo Legal Aid for six to eight months.  [Dkt. No. 18, Ex. 16 at 10, 13].
Hugo Martinez also stated that, during his five years of private practice, he supervised his own
secretary and shared a receptionist with other attorneys.  [Dkt. No. 18, Ex. 16 at 17; Ex. A].

Plaintiff has failed to provide any competent evidence disputing this testimony.[6]  Accordingly, the Court finds that Hugo Martinez possessed the requisite supervisory experience of both attorneys and professional employees.

Furthermore, while it appears that Plaintiff possessed substantive supervisory experience, it is not clear that Plaintiff possessed such substantive supervisory experience so as to make her "clearly more qualified" than Hugo Martinez.  The evidence before the Court on summary judgment negates Plaintiff's argument on this issue.  Hugo Martinez's professional legal experience included several felony trials, [Dkt. No. 17, Ex. U at 18-35],[7] more than 24 years as a practicing attorney, [Dkt. No. 17, Ex. U at 10], as well as eight to nine years as a public defender. [Dkt. No. 17, Ex. U at 15].  On the other hand, Plaintiff's professional legal experience included one felony bench trial and one "examining trial," [Dkt. No. 17, Ex. A at 51-52], seven years as a practicing attorney, [*Id*. at 7], and four years as a public defender.  [*Id*. at 11].  Given that Hugo Martinez exhibited more felony trial experience, more years as a practicing attorney, and more years as a public defender, it is apparent to the Court that Plaintiff was not "clearly more qualified" than Hugo Martinez for the Public Defender position.  The Court therefore concludes that Plaintiff has failed to create a fact issue as to whether Plaintiff was "clearly more qualified" than Hugo Martinez.

However, Plaintiff asserts that the felony trial experience[8] and years of practice cited by Defendant were merely pretext, first, because the Commissioners were not familiar with

---

[6] In support of her assertion that Plaintiff did not supervise other attorneys or professionals, Plaintiff directs the Court to her own affidavit, in which she stated that she held personal knowledge that Hugo Martinez held slot # 267 and that "this slot is categorized as a regular assistant public defender position."  [Dkt. No. 18, Ex. 17 at 2].  This evidence is insufficient to show that Plaintiff did not supervise other attorneys while working at the public defender's office.

[7] In support of its summary judgment motion, Defendant has filed a document entitled "Cases tried to jury verdict by Hugo Martinez."  [Dkt. No. 17, Ex. U, Ex. 2].  This document provides the basis of Hugo Martinez's deposition testimony related to his felony trial experience.  However, this document is not proper summary judgment evidence because it is not sworn or certified as required under Federal Rule of Civil Procedure 56(e)(1).

[8] The requirement for felony trial experience was established on January 22, 2007.  [Dkt. No. 17, Ex. F at 10-11].

Plaintiff's work and second, because the Commissioners did not ask Hugo Martinez questions about his felony trial experience during his interview. In support of the first assertion, Plaintiff directs the Court to the testimony of Judge Valdez, Commissioner Martinez, and Commissioner Tijerina.[9] During his deposition, Judge Valdez confirmed that while he had personal knowledge of Hugo Martinez and could recall that Hugo Martinez previously practiced before him, he did not have personal knowledge of Plaintiff and could not recall whether she practiced before him. [Dkt. No. 18, Ex. 3 at 43-46]. Next, Commissioner Martinez affirmed that he had seen Plaintiff in court, but had not seen Plaintiff try a case. [Dkt. No. 18, Ex. 5 at 96]. Commissioner Martinez also stated that, at the time the Commissioners Court decided not to interview only the two candidates recommended, he knew only of Hugo Martinez, Ernie Garcia, and Virginia Aranda. [*Id*.]. Commissioner Martinez also stated that he did not find out that Plaintiff had no trial experience until he received Guevara's letter. [*Id*.]. This testimony suggests that, before the selection process, Judge Valdez and Commissioner Martinez did not have personal knowledge of Plaintiff's courtroom experience.

Defendant has provided further evidence that the Commissioners Court learned about Plaintiff's lack of felony trial experience through the selection process. Specifically, Commissioner Martinez testified that he learned that Plaintiff had no trial experience when the issue was raised by Guevara's letter. [*Id*.]. He also stated that "[t]he minimum requirement wasn't there, and then now I find out that she only had one bench trial, as a juvenile prosecuting attorney, and one examining trial at the penalty level." [*Id*. at 97]. Furthermore, Commissioner Martinez stated that he reviewed Plaintiff's application during the interview. [*Id*. at 118-119].

---

[9] Contrary to Plaintiff's assertion, Commissioner Tijerina merely stated, during her deposition, that she did not recall what she understood about Plaintiff's supervisory experience. [Dkt. No. 18, Ex. 2 at 34-38]. This testimony is insufficient to show that Commissioner Tijerina ignored Plaintiff's supervisory experience during the selection process.

Finally, Commissioner Martinez indicated that each of the candidates was asked about their trial experience during their interviews.  [*Id*. at 119].  Plaintiff has failed to dispute these alleged facts with any competent summary judgment evidence.  For these reasons, it is apparent that the requirement of felony trial experience could not have been a pretext to discriminate against Plaintiff as this requirement was clearly established before the Commissioners Court learned of Plaintiff's limited trial experience.

Next, Plaintiff asserts that the Commissioners Court did not inquire into Hugo Martinez's felony trial experience.  Contrary to this argument, however, the summary judgment evidence before the Court shows that the Commissioners did ask questions related to his trial experience and also that such information was already available to them.  Commissioner Martinez's deposition testimony shows that the Commissioners asked each candidate questions related to their felony trial experience, cases they had tried, the number of cases they tried, and cases they handled.  [*Id*. at 119].  On the other hand, Plaintiff directs the Court to evidence showing that Commissioner Tijerina and Judge Valdez did not ask Hugo Martinez particular questions or could not recall specifically whether they asked Hugo Martinez particular questions about his trial experience.   During her deposition, Commissioner Tijerina stated that the Commissioners did not ask how many acquittals Hugo Martinez obtained.  [Dkt. No. 18, Ex. 2 at 27].  She also stated that she did not ask Hugo Martinez about the results of the cases, but that she did not recall whether the other Commissioners did.  [*Id*. at 32].  Furthermore, she stated only that she could not recall whether the Commissioners asked Hugo Martinez how many cases he had won.  [Dkt. No. 18, Ex. 5 at 28-29].  However, she specifically stated that she knew he had tried "a lot" of cases and that she had seen him try a case.  [*Id*. at 26-27].

During his deposition, Judge Valdez testified that he did not recall which specific questions were asked of the candidates.  [Dkt. No. 18, Ex. 3 at 32].  However, he did testify that he had personal knowledge of Hugo Martinez' experience based on Judge Valdez' years as a Justice of the Peace.  [*Id*. at 39-40].  Further, Commissioner Martinez stated that he determined that Hugo Martinez had substantial felony trial experience, "based on the interviews and the application."  [Dkt. No. 18, Ex. 2 at 26].  More importantly however, Plaintiff does not dispute that Hugo Martinez has more felony trial experience and that this requirement was established before Plaintiff applied for the position of Public Defender.  For these reasons, the Court finds that the reasons provided by Defendant for appointing Hugo Martinez were not a pretext for discrimination.

> **b.**     **Whether the abrogation, if any, of the procedure for selecting the Public Defender was a pretext for discrimination**

Next, Plaintiff contends that the Commissioners Court's abrogation of its procedure for selecting the Public Defender evidences discrimination.  Specifically, Plaintiff contends that the Commissioners Court voted unanimously to interview only the top two candidates nominated by the selection committee.  [Dkt. No. 18 at 19].  On the other hand, Defendant argues that the Commissioners Court never restricted itself to interviewing only the top two candidates.  [Dkt. No. 22 at 13].  In order to determine whether Plaintiff has met her burden to show that Defendant's proffered reasons for not hiring Plaintiff were a pretext for discrimination, the Court must first determine, to the extent possible, what procedure the Commissioners Court established to select the Public Defender.

Defendant asserts that, under Texas law, the Court's determination of the procedure established to select the Public Defender is governed by the official minutes of the Commissioners Court.  [Dkt. No. 17 at 30].  Indeed, under Texas law, it is established that "[t]he

Commissioners Court may only validly act as a body; the acts of a single commissioner do not bind the court." *Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 360 (Tex. App.-Austin 2003, no pet.). Furthermore, the Commissioners Court "'speaks through its official minutes.'" *Id*. (quoting *Maples v. Henderson County*, 259 S.W.2d 264, 268 (Tex.Civ.App.-Dallas 1953, writ ref'd n.r.e.)). Accordingly, the Court will focus on the official minutes provided by Defendant in determining the procedure established by the Commissioners Court for selecting the Public Defender.

While the Commissioners Court discussed the procedural process for selecting the Public Defender during several meetings, three meetings are pertinent to the determination of the procedure created before the candidates were interviewed. On January 22, 2007, Commissioner Garza suggested that the Commissioners Court form a committee to view applications for the position and make recommendations. [Dkt. No. 17, Ex. F at 10-11]. Thereafter, the Commissioners Court voted unanimously for Mares to return with recommendations for such a committee at the next meeting. [*Id*.]. On February 12, 2007, the Commissioners Court voted to have Mares screen the applicants to ensure they met the minimum requirements and that "all applicants who [met] the minimum requirements should be brought to the Commissioners Court" and that they would decide who would be interviewed. [Ex. I at 18-19]. Thereafter, on February 26, 2007, the Commissioners voted unanimously that each Commissioner would appoint a member of the selection committee. [Dkt. No. 17, Ex. I at 8-9]. During this meeting, Judge Valdez requested that the selection committee "bring back" the top two candidates to the Commissioners Court. [*Id*.].

However, Plaintiff and Defendant dispute the substance of the motion which the Commissioners voted on during the February 26 meeting. The February 26 minutes show that

Commissioner Tijerina motioned to form a selection committee; that Judge Valdez requested that the selection committee bring back the two top candidates; and that the Commissioners subsequently voted unanimously in favor of Commissioner Tijerina's motion.  In pertinent part, the minutes of the motion state as follows:

> "Cmr. Tijerina recommended that each Commissioner appoint a member not from the judiciary to the Selection Committee.  Cmr. Sciaraffa motioned to approve Cmr. Tijerina's recommendation.  Cmr. Martinez seconded the motion.
>
> Judge Valdez asked that each commissioner appoint a member and get a date so that by next week they could get together and bring back the top two to the Court [. . .]  Motion carried 5-0 by unanimous consent."  [Dkt. No. 17, Ex. J at 8-9].

On the other hand, Plaintiff directs the Court to a video recording of the February 26 meeting.  As a preliminary matter, the Court notes that the video was not timely filed.[10]  Nevertheless, Defendant has presented no objection to the Court's consideration of this evidence; rather, Defendant asserts that the video supports Defendant's position that the Commissioners Court never restricted itself to interviewing only the top two candidates.  The Court agrees with Defendant.  Similar to the February 26 minutes, the video recording shows that Commissioner Tijerina motioned that the Commissioners form a committee and that each Commissioner appoint a member of the committee.  [Dkt. No. 20].  However, the video recording also shows that Commissioner Tijerina motioned to have the selection committee screen the applications and make recommendations to the Commissioners Court.  [Dkt. No. 20].  Thus, it is apparent that Commissioner Tijerina motioned to have the selection committee screen applications and make recommendations.  Thereafter, the video recording also shows that Judge Valdez provided two recommendations:  "I concur [. . .] each one of us appoint a member to the committee [. . .] have

---

[10] Defendant filed its Motion for Summary Judgment on August 19, 2008.  [Dkt. No. 17].  Under the Local Rules, Plaintiff's response, and thus all supplemental exhibits, were due on September 9, 2008.  While Plaintiff timely filed a Response in Opposition to Defendant's Motion for Summary Judgment, the video was not filed until September 11, 2008.

the committee meet with the applicants and recommend the top two to the Commissioners Court and then we'll take the process after that."  [Dkt. No. 20].  Importantly, however, Judge Valdez did not request, much less present a motion, that the Commissioners interview only the two top candidates recommended by the selection committee.  Regardless of whether Judge Valdez's request created binding precedent for the selection process, it is clear that neither Commissioner Tijerina's motion or Judge Valdez's request provided that the Commissioners Court would only interview the top two candidates recommended by the selection committee.  Commissioner Tijerina moved for the selection committee to make recommendations and Judge Valdez requested that the selection committee recommend the top two candidates of the Commissioners Court.  [Dkt. No. 20].  Plaintiff has provided no evidence that the recommendations were binding on the Commissioners.  Rather, it is apparent that they were only recommendations and that the Commissioners Court never restricted itself, in any meeting, to interviewing only the top two candidates recommended.  Indeed, during the course of her deposition, Plaintiff conceded that "whatever recommendation the screening committee makes is just that, a recommendation, and the Commissioners Court has the ultimate authority to decide."  [Dkt. No. 17, Ex. A at 68].

In sum, therefore, it is apparent that the Commissioners Court created the selection committee, composed of five individuals, to interview all five candidates for the Public Defender position and that this selection committee would make recommendations to the Commissioners Court.  The Commissioners Court did not establish a procedure wherein it would interview only the top two candidates recommended by the selection committee.  Accordingly, the Court concludes that the Commissioners Court did not abrogate its procedure for selecting the Public Defender when it voted by a majority to interview all candidates again and later voted unanimously to appoint Hugo Martinez.

Moreover, even if the Court determined that the Commissioners Court abrogated the procedure established for selecting the Public Defender, Defendant has provided evidence showing that the Commissioners had a non-discriminatory reason for doing so.  Even if the Commissioners voted unanimously to interview only the top two candidates recommended by the selection committee, it is clear that the Commissioners Court voted to interview all candidates on March 12, 2007, after Commissioner Tijerina expressed concern that Plaintiff did not possess the felony trial experience required under the Request for Qualifications.  Indeed, when asked why the Commissioners Court rejected the recommendations of the selection committee, Commissioner Martinez replied that the decision was based on Guevara's letter and Tijerina's concern, and that deference was paid to Commissioner Tijerina's concern because of her practice as a lawyer.  [Dkt. No. 18, Ex. 2 at 95-96].  In sum, Plaintiff has failed to provide evidence showing that any of the Commissioners abrogated the procedure as a pretext for gender discrimination.  Indeed, when discussing the selection process during her deposition, Plaintiff concedes that the Commissioners Court have "always been the ultimate decision-makers."  [Dkt. No. 17, Ex. A at 67].

### c.    Whether Guevara's Letter and Commissioner Tijerina's memorandum were pretextual

Next, Plaintiff argues that Guevara's letter and Commissioner Tijerina's memorandum describing Plaintiff's lack of felony trial experience were prepared to justify the decision of the County Commissioners to ignore the selection committee's recommendations and begin the interview process over again.  Guevara testified that, during the course of Plaintiff's interview with the selection committee, he asked Plaintiff three times about her felony trial experience.  [Dkt. No. 18, Ex. 4 at 30].  Guevara further testified that Plaintiff responded by stating, "[n]o, I've never taken it to a jury trial, but I have worked on a felony, but no trial on the felony."  [*Id.*].

Nevertheless, Guevara gave Plaintiff a maximum score under the grading system.[11]   Further, Plaintiff directs the Court to the deposition testimony of Nava and Castenda, who stated that Guevara did not, as he claims, enter into a debate during the Selection Committee meeting about Plaintiff's trial experience.  [Dkt. No. 18, Ex. 22 & Ex. 21].

On the other hand, Defendant argues that Guevara provided a rational explanation for giving Plaintiff the score he did.  During his deposition, Guevara stated that he gave Plaintiff the score he did because he believed that all candidates had been prescreened and thus met all of the minimum qualifications.  [Dkt. No. 18, Ex. 4 at 54].  Guevara also stated that he made a note of Plaintiff's lack of felony trial experience.  [*Id.* at 55].  In sum, it is apparent to the Court that Guevara believed Plaintiff had been screened for the minimum qualifications, that he learned of her lack of felony jury trial experience during the interview, and that he wrote the memorandum for this reason.  While it is also apparent that Guevara gave Plaintiff a maximum score for experience, and while there is conflicting testimony as to whether a debate among the selection committee members about Plaintiff's trial experience, these uncertainties do not cloud the fact that Plaintiff did not have extensive felony trial experience.

Moreover, Plaintiff has provided no evidence that any of the Commissioners influenced Guevara or instructed him to write his letter in order to begin the interview process over again. Instead, Plaintiff merely asserts that "[a] jury could reasonably infer from this evidence that someone got to Guevara," and that his letter and Commissioner Tijerana's subsequent memorandum were prepared to justify overturning the recommendations in favor of the female nominees.  Plaintiff's assertion is speculative and not supported by any competent summary

---

[11]  The scoring sheet provided by Plaintiff in support of this assertion are not attached to an affidavit and thus inadmissible as proper summary judgment evidence.  Nevertheless, Guevara's deposition testimony is sufficient to provide evidence that he gave Plaintiff a five on for all categories, including experience.  [Dkt. No. 18, Ex. 4 at 29, 32, 54].

judgment evidence.  More importantly, however, even if a Commissioner did prompt Guevara to write the letter, as implied by Plaintiff, there is no indication that Guevara wrote the letter because of Plaintiff's gender.  Similarly, there is no indication that any of the Commissioners prompted Guevara to write the letter as a pretext for gender discrimination.  Accordingly, the Court concludes that Plaintiff has failed to create a fact issue as to whether Guevara prepared his letter as a result of the Commissioners' animus against Plaintiff based on her gender.

  **d.**  **Whether Plaintiff has established a pretext by alleging that a "suspicious and suspect turn of events" occurred before and after the announcement of her position as a top candidate**

  Finally, Plaintiff argues that events leading up to and immediately following the announcement that she and another female candidate were recommended by the selection committee show that Commissioner Martinez harbored animus against her because of her gender.  [Dkt. No. 18 at 15].  First, Plaintiff asserts that, prior to the selection committee interviews, Commissioner Martinez attempted to dissuade her from pursuing her candidacy.  [Dkt. No. 18 at 15].  Plaintiff alleges that Commissioner Martinez asked her as follows: "Are you sure you really want this job?"  [Dkt. No. 18, Ex. 10 at 2].  After Plaintiff confirmed that she wanted the position, Commissioner Martinez allegedly stated that if Plaintiff withdrew her application, he would help her obtain a position as head of the Juvenile Probation Department.  [*Id*.].  According to Plaintiff, Commissioner Martinez continued as follows:  "The reason that I'm telling you this is because I've gotten a lot of phone calls in support of both you and Hugo [. . .] it's a hard decision to make [. . .] I'm just telling you if you withdraw your application [. . .] we'll throw support your way for the other position."  [*Id*.].  Importantly, however, Commissioner Martinez's alleged statements bear no indication that he attempted to dissuade Plaintiff from pursuing the position because of her gender.  While it could be inferred from

Commissioner Martinez's alleged statements that he attempted to dissuade Plaintiff from withdrawing her application, Plaintiff has failed to show that Commissioner Martinez made such an attempt because of Plaintiff's gender.

Nevertheless, Plaintiff also asserts that Commissioner Martinez showed animus towards her during a phone call he made to Mares after learning that Plaintiff and Virginia Aranda were recommended by the selection committee.  [Dkt. No. 18 at 15].  Plaintiff alleges that, after learning that Plaintiff and another female candidate were the two top recommendations, Commissioner Martinez became upset and called Mares and stated "[w]ell, this shouldn't have been."  [Dkt. No. 18, Ex. 9 at 38].  Plaintiff alleges that when Commissioner Martinez made this statement, he was referring to the memorandum written by Mares, which noted that Plaintiff and Virginia Aranda were the top two candidates, and not to the memorandum written by Commissioner Tijerina, which noted that the two candidates selected may not have had felony trial experience.   Contrary to Plaintiff's assertion, however, Mares did not testify that Commissioner Martinez was referring only to the memorandum sent by Mares.  According to Mares, Commissioner Martinez stated as follows:  "I got the memo [. . .] and are these the actual recommendations?"  [Dkt. No. 18, Ex. 9 at 21].  However, the Court need not determine whether Commissioner Martinez was referring to Mares's memorandum or Commissioner Tijerina's memorandum because the issue is irrelevant.  Commissioner Martinez's statement that "this shouldn't have been" bears no indication that it was prompted by animus against Plaintiff based on her gender.  Accordingly, even assuming Commissioner Martinez was referring to Mares's memorandum, his statement does not show animus towards Plaintiff based on her gender.

In sum, Plaintiff has failed to show that Commissioner Martinez's alleged statements, made to Plaintiff before the selection committee interviews and to Mares after the selection

committee interviews, create a fact issue as whether Defendant's reason for not hiring Plaintiff were pretextual.  The evidence before the Court shows that the Commissioners appointed Hugo Martinez because they believed he possessed more felony trial experience, more years of experience as a practicing attorney, and more years as a public defender.  Accordingly, the Court concludes that Plaintiff has failed to satisfy her burden of raising a fact issue that Defendant's reason for not hiring her was a pretext for discrimination.

## III.    CONCLUSION

The Court concludes that Defendant has provided a legitimate, non-discriminatory reason for selecting Hugo Martinez instead of Plaintiff for the position of Public Defender.  For the reasons described above, Plaintiff has failed to show that this reason was a pretext for gender discrimination.  Accordingly, Defendant's Motion for Summary Judgment, [Dkt. No. 17], is **GRANTED**; judgment is rendered in Defendant's favor and Plaintiff's claims are hereby dismissed with prejudice.

IT IS SO ORDERED.

DONE this 5th day of March, 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**To Insure Proper Notice, Each Party Who Receives This Order Shall Forward a Copy of it to Every Other Party And Affected Non-party Even Though They May Have Been Sent One by The Court.**